# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| BA JACOBS FLIGHT SERVICES, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 12 C 2625 |
| v. | ) ) | Jeffrey T. Gilbert |
| RUTAIR LIMITED, a/k/a RUTAIR LLC, a Jamaica Corporation, and GEORGE LEVY, an individual, | ) ) ) ) | Magistrate Judge |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On December 1, 2010, Plaintiff BA Jacobs Flight Services, LLC ("BA Jacobs") entered into a lease agreement (the "Lease") with Defendant RutAir Limited ("RutAir"), in which BA Jacobs agreed to lease to RutAir a 2010 Cessna Caravan 208B aircraft for a period of five years with monthly rent of $25,000, among other terms. As a condition of BA Jacobs entering into the Lease, Defendant George Levy ("Levy"), who is the Managing Director of RutAir, signed a personal guaranty (the "Guaranty"), in which he agreed to guarantee personally RutAir's payments under the Lease up to $300,000 in the event of a breach of the Lease, plus attorneys' fees and costs incurred by BA Jacobs in enforcing its rights under the Guaranty. BA Jacobs alleges that RutAir breached the Lease by failing to make the required monthly rent payments when due.

This matter is before the Court on BA Jacobs' Motion for Partial Summary Judgment [ECF 66]. BA Jacobs seeks partial summary judgment on Count I of its Complaint against RutAir as to its liability under the Lease and on Count II of its Complaint against Levy as to his

personal liability under the Guaranty. For the reasons discussed herein, the Court grants BA Jacobs' Motion for Partial Summary Judgment [ECF 66] against both RutAir and Levy.

## I. Summary Judgment Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 951 (7th Cir. 2013). In deciding a motion for summary judgment, the court "review[s] the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *NES Rental s Holdings, Inc. v. Steine Cold Storage, Inc.,* 714 F.3d 449, 452 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The party opposing the motion for summary judgment "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314 (7th Cir. 2011). However, the opposing party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001)).

Summary judgment is a "put up or shut up moment in litigation . . . by which we mean that the non-moving party is required to marshal and present the court with the evidence [it] contends will prove [its] case. And by evidence, we mean evidence on which a reasonable jury could rely." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010) (internal citations and quotation marks omitted). So a court will grant summary judgment "if no

reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted); *Northbound Group, Inc. v. Norvax, Inc.*, 5 F.Supp.3d 956, 966 -967 (N.D.Ill. 2013).

Importantly, in considering whether summary judgment is appropriate, the Court relies on the statements of facts submitted by the parties. To that end, the parties must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the District Court of the Northern District of Illinois.

## II. Local Rule 56.1 Requirements

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts . . . ." Local Rule 56.1(a). The non-moving party opposing the motion for summary judgment then must file a response to this statement, as well as its own statement of additional facts if necessary. *See* Local Rule 56.1(b)(3). The moving party then has an opportunity to admit, or deny the non-moving party's statement of additional facts. *See* Local Rule 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

"The obligation set forth in Local Rule 56.1 is not a mere formality. Rather, [i]t follows from the obligation imposed by Fed.R.Civ.P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (quotation marks and citations omitted). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying

3

disputed facts," the Seventh Circuit has "consistently upheld the district court's discretion to require strict compliance with those rules." *F.T.C. v. Bay Area Bus. Council, Inc.,* 423 F.3d 627, 633 (7th Cir. 2005); *see also Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases). Indeed, as another judge in this district previously observed, "the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D.Ill. 2000) (Castillo, J.); *see also Bank of New York Mellon Trust Company v. James,* 2013 WL 6009260, at *1 (N.D.Ill. 2013).

Here, despite having the opportunity to do so, both RutAir and Levy — who are represented by counsel — failed to submit a response to BA Jacobs' Local Rule 56.1 Statement of Material Facts [ECF 68]. Local Rule 56.1(b)(3)(C) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *See* Local Rule 56.1(b)(3)(C). The Court, therefore, deems admitted all of the facts set forth in BA Jacobs' Local Rule 56.1 Statement of Material Facts [ECF 68]. RutAir and Levy, however, did comply with Local Rule 56.1(b)(3)(C) and filed a Local Rule 56.1 Statement of Additional Facts [ECF 70] to which BA Jacobs responded [ECF 73].

RutAir and Levy's failure to respond to BA Jacobs' Local Rule 56.1 Statement of Material Facts, however, is not the only problem with the parties' compliance with Local Rule 56.1. Neither BA Jacobs nor RutAir and Levy cite to their respective Local Rule 56.1 Statement of Undisputed Material Facts [ECF 68] or Local Rule 56.1 Statement of Additional Facts [ECF

70]. Instead, in their memoranda of law in support of, or opposition to, BA Jacobs' Motion for Partial Summary Judgment [ECF 66], the parties cite directly to the record, including to a host of underlying documents, pleadings and exhibits. Courts in this district repeatedly have held that, in memoranda of law filed in support of, or in opposition to, motions for summary judgment, parties should cite to specific Local Rule 56.1 statement or statements of fact in support of their arguments, not to the record directly. *See First Merit Bank, N.A. v. 2200 North Ashland, LLC et al.*, 2014 WL 6065817, at *4 (N.D.Ill. 2014); *Morningware, Inc. v. Hearthware Home Products Inc.*, 2012 WL 3721350, at *3 (N.D.Ill. 2012); *LaSalvia v. City of Evanston*, 806 F. Supp. 2d 1043, 1046 (N.D.Ill. 2011); *Daoust v. Abbott Laboratories*, 2006 WL 2711844, at * 4 (N.D.Ill. 2006) ("[C]itations in the [summary judgment memoranda] . . . should be to the 56.1(a) or (b) statement only.").

"[I]t is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Although the Court could exercise its discretion to deny BA Jacob's Motion for Partial Summary Judgment outright in light of this violation of Local Rule 56.1, the Court finds it preferable at this juncture to address BA Jacobs' Motion for Partial Summary Judgment on the merits and move this case forward. In doing so, the Court will excuse both parties' failure to cite to their statement of facts in their respective briefs and instead rely upon the pleadings and properly supported statements made in the parties' Local Rule 56.1 submissions.

## III. Statement of Facts

The Court draws the following facts from the pleadings and the parties' Local Rule 56.1 submissions. The Court construes all properly supported facts and draws all reasonable inferences in the light most favorable to RutAir and Levy, the non-moving parties.

On December 1, 2010, BA Jacobs entered into a Lease with RutAir, in which BA Jacobs agreed to lease to RutAir a 2010 Cessna Caravan 208B aircraft (the "Aircraft") for a period of five years. BA Jacobs' Local Rule 56.1 Statement of Material Facts ("SOF") [ECF68], at ¶ 7. As a condition of entering into the Lease with RutAir, Levy signed an Agreement of Guaranty in which Levy personally guaranteed the obligation of RutAir in the event that RutAir defaulted on the Lease. SOF, at ¶ 8.

One of the terms of the Lease provides that the monthly rent is $25,000 "with the first payment due upon delivery, followed by 59 additional payments of $25,000 per month, beginning on the first day of the month following the month of delivery of the aircraft. Payments are due and payable on the first of each month." SOF, at ¶ 9. Another term of the Lease provides that RutAir is responsible for paying late fees of 1.8% of the regular month lease payments, as well as pilot fees and engine fees. SOF, at ¶ 10.

Other terms of the Lease require the payment of a $75,000 security deposit due upon signing of the Lease and provide that the cost of delivering the Aircraft to RutAir was the responsibility of RutAir. SOF, at ¶¶ 11, 12. RutAir paid the security deposit in three installments: $50,000 on December 2, 2010, $15,000 on December 7, 2010, and $10,000 on December 8, 2010. SOF, at ¶ 12. The Aircraft was delivered to RutAir in Jamaica on approximately December 25, 2010. SOF, at ¶ 13.

On January 12, 2011, RutAir paid BA Jacobs $35,000 — $27,684.83 of which covered the cost of delivering the Aircraft to Jamaica, and the balance was applied to the $25,000 monthly rent payment due on January 1, 2011. SOF, at ¶ 15. RutAir's subsequent payments were as follows: $4,000 on January 21, 2011; $6,000 on January 26, 2011; $25,000 on February 10, 2011; $9,000 on February 27, 2011; and $11,000 on March 20, 2011. SOF, at ¶ 16. RutAir did not make any other payments. SOF, at ¶ 17.

On April 2, 2011, BA Jacobs repossessed the Aircraft because RutAir had failed to pay timely its monthly rent payments due and owing under the Lease. SOF, at ¶ 24.

**IV. Analysis**

    **A.**     **The Terms of the Lease Are Not Ambiguous and RutAir Was in Breach of the Lease**

In order to prevail in a breach of contract claim, a plaintiff has to prove all four aspects of its claim: "existence of a contract, [its] performance of the contract, breach of the contract by the defendant, and the existence of damages resulting from the breach." *Northbound Group, Inc. v. Norvax*, 5 F. Supp. 3d 956, 969 (N.D.Ill. 2013) (citing *Lundy Lu LLC v. Ill. Cent. R.R. Co.*, --- Ill.App.3d ---, 984 N.E.2d 1171, 1175 (2013)). RutAir has admitted that it entered into the Lease with BA Jacobs. SOF, at ¶ 8. After RutAir paid its $75,000 security deposit, BA Jacobs delivered the Aircraft to Jamaica on December 25, 2010. SOF, at ¶¶ 13, 15. RutAir also has admitted that the monthly rent was $25,000 and that it was due on the first day of each month. SOF, at ¶ 9.

Based upon the undisputed facts, it is clear that RutAir did not make its $25,000 monthly payment on the first day of the month for January, February or March 2011. SOF ¶¶ 15, 16. Based on the Court's calculations and the undisputed payments that were made, it appears that,

ultimately, BA Jacobs may have collected its January and February rent payments, albeit late.[1] The Court recognizes, however, that the payments RutAir made in January and February may not have satisfied all of RutAir's obligations to pay late fees, pilot fees and engine reserve fees. *See* SOF, at ¶ 10. As for the March rent payment, RutAir only paid $11,000 and did not pay it until March 30, 2011. SOF, at ¶ 16. Therefore, the issue before the Court is whether RutAir breached the Lease as a result of its failure to make its monthly rent payments in a timely fashion as required by the terms of the Lease.

BA Jacobs argues that RutAir never was current on its monthly rent payments under the Lease, and therefore, it was in breach of the Lease. Relying upon Section 18 of the Lease which states that BA Jacobs only has the right to repossess the Aircraft "[i]f Lessee fails to may <u>any</u> payment of rent" (*see* BA Jacobs' Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §18 (emphasis added)), RutAir argues that it was not in breach of the Lease because it did make some payments each month pursuant to the Lease. Specifically, Section 18 of the Lease provides:

> If Lessee fails to make any payment of rent or other charges within 30 days after such amounts are due and payable, or if Lessee commits an Event of Default, as defined herein, Lessor shall have the right to take possession of the Aircraft wherever it may be located without demand or notice without any court order or other process of law and to pursue any other remedy available to Lessor at law or in equity.

---

[1] On January 12, 2011, RutAir paid BA Jacobs $35,000 — $27,684.83 of which covered the cost of delivering the Aircraft to Jamaica, and $7,315.17 for its January rent. SOF, at ¶ 15. RutAir then made two payments: $4,000 on January 21, 2011 and $6,000 on January 26, 2011. Based on the Court's calculations, RutAir was short $7,684.83 as of February 1, 2001. RutAir then made a $25,000 payment on February 10, 2011 — $7,684.83 satisfied its January shortfall and the remainder of $17,315.17 was applied to February rent. On February 27, 2011, RutAir made a $9,000 payment, which in theory gave RutAir a $1,684.83 surplus to apply to its March rent. The Court, however, recognizes that, pursuant to the Lease, RutAir owed late fees, engine fees and pilot fees, and it is not clear to the Court how the surplus funds were applied. Then on March 20, 2011, RutAir made an $11,000 rent payment. SOF, at ¶ 16. Even taking the $1,684.83 surplus into account, RutAir still was well short and overdue with its March rent payment.

*See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §18.

RutAir contends that the Lease is ambiguous because it is unclear whether the phrase "fails to make any payment" in Section 18 of the Lease means a failure to make the entire payment within 30 days or failure to make some payment within 30 days. Relying on parol evidence, RutAir argues that Levy, as the Managing Director of RutAir, understood Section 18 of the Lease to mean that RutAir did not have to pay the entire $25,000 on the first of each month and that as long as it made some payment of rent each month, even if it was not the entire amount, RutAir would not be in default of the Lease.

The primary goal of contract interpretation is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms. *Village of Arlington Heights v. Anderson,* --- Ill.App.3d ---, 963 N.E.2d 949, 956 (2011). When construing a contract, a court must place the meanings of words within the context of the contract as a whole. *Dean Management Inc. v. TBS Construction, Inc.,* 339 Ill.App.3d 263, 269, 790 N.E.2d 934, 939 (2003). A contract term is not ambiguous merely because the parties disagree as to its interpretation; rather, a term is ambiguous when it reasonably may be interpreted in more than one way. *Arlington Heights,* 963 N.E.2d at 956; *Dean Management,* 339 Ill.App.3d at 269, 790 N.E.2d at 939. If the terms of the contract are unambiguous, the court should look only at the "four corners" of the contract and will not consider parol evidence. *Dean Management,* 339 Ill.App.3d at 269, 790 N.E.2d at 939.

The Court is not persuaded by RutAir's argument that the Lease is ambiguous and finds as a matter of law that RutAir breached the Lease. *See J.M. Beals Enters., Inc. v. Indus. Hard Chrome, Inc.,* 194 Ill.App.3d 744, 748, 551 N.E.2d 340, 342 (1990) ("In the absence of

9

ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language."). RutAir's interpretation of the word "any" in the context of the whole Lease is not a reasonable interpretation. An ambiguity does not exist in a contract simply because the parties disagree on the meaning of a provision; rather, ambiguity exists when a contract contains language that is susceptible to more than one reasonable interpretation. *Ringgold Capital IV, LLC v. Finley*, --- Ill.App.3d ---, 993 N.E.2d 541, 547 (2013). Rather than focusing on one clause or provision in isolation, a court must read the entire contract in context and construe it as a whole, viewing each provision in light of the other ones. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232, 874 N.E.2d 43, 58 (2007). Under RutAir's theory, it could pay $1.00 on the first of each month and never be in default of the Lease because it paid some of, but not the entire, payment due. That is not a commercially reasonable interpretation. It also conflicts with Section Three of the Lease which speaks in terms of 60 payments of $25,000 per month during the term of the Lease.

Section Three of the Lease provides: "The rent payable to Lessor for the Aircraft herein leased shall be $25,000, with the first payment due upon delivery, followed by 59 additional payments of $25,000 per month, beginning on the first day of the month following the month of delivery of the aircraft. Payments are due and payable on the first of each month." *See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §3; SOF, at ¶ 9. RutAir's interpretation that it was not required to pay the full $25,000 on the first day of each month would render Section Three of the Lease meaningless. When construing a contract, a court must place the meanings of words within the context of the contract as a whole. *Dean Management*, 339 Ill.App.3d at 269, 790 N.E.2d at 939.

Construing the Lease as a whole, the Court finds that the full rent payment of $25,000 was due on the first of each month and that RutAir's failure to make its monthly payments when due on the first of each month was a breach under the Lease.

**B.    BA Jacobs Was Authorized Under the Lease to Repossess the Aircraft**

BA Jacobs argues that it had the right to repossess the Aircraft by the express terms of the Lease as a result of RutAir's breach. The Court agrees. Again, Section 18 of the Lease provides:

> If Lessee fails to make any payment of rent or other charges within 30 days after such amounts are due and payable, or if Lessee commits an Event of Default, as defined herein, Lessor shall have the right to take possession of the Aircraft wherever it may be located without demand or notice without any court order or other process of law and to pursue any other remedy available to Lessor at law or in equity.

*See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §18. An Event of Default is defined, among other things, as "the failure to pay when due any amount required to be paid by Lessor hereunder; provided, however, the Lessee's may cure each such Event of Default by paying such overdue amount within (15) days after receipt of notice thereof from Lessor." *See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §18(a).

The parties argue about the notices of default BA Jacobs sent to RutAir and Levy and whether BA Jacobs gave RutAir and Levy enough time to cure in an "Event of Default" as provided for under the Lease prior to exercising its right to repossess the Aircraft. RutAir disputes that it received all of the alleged notices of default and contends that BA Jacobs did not provide RutAir with a 15-day cure period as mandated by the Lease. The Court, however, does not need to decide whether or not RutAir and Levy received all of the notices of default that BA Jacobs allegedly sent. Nor does the Court have to decide whether RutAir and Levy were provided 15 days to cure the default as provided for in the Lease.

11

The Court also does not have to decide whether or not the last paragraph of Section 18 applies. The last paragraph of Section 18 of the Lease seemingly contains a 10-day cure provision after notice of an Event of Default. The Court need not decide the import of this apparent discrepancy because, as discussed below, BA Jacobs did not repossess the Aircraft as the result of RutAir's failure to cure an Event of Default within 10 days or 15 days of notice of such an Event of Default. BA Jacobs repossessed the Aircraft under Section 18 of the Lease because RutAir failed to pay March rent on the Aircraft within 30 days of when that rent payment was due, and BA Jacobs had the right to do so under Section 18 of the Lease.

Section 18 of the Lease provides that BA Jacobs has two options if RutAir fails to pay rent when due under the Lease. One option permits BA Jacobs to repossess the Aircraft after 30 days without demand or notice if RutAir has not made its monthly rent payment in full. Alternatively, BA Jacobs has a second option to send RutAir a notice of default if it is late on its monthly rent payment. The notice then triggers RutAir's 15-day period to cure its default. If RutAir makes its monthly rent payment within 15 days after receiving the notice of default, then RutAir would become current on its rent. If RutAir does not cure the default and does not make its monthly rent payment in full within the 15-day period, then BA Jacobs has the right to repossess the Aircraft in fewer than 30 days as otherwise provided for in the Lease.[2]

In other words, BA Jacobs can give notice to RutAir of its default, and if the default is not cured after 15 days, then BA Jacobs can repossess the Aircraft. Alternatively, if RutAir does not pay the rent within 30 days after the first of the month, then BA Jacobs can repossess the Aircraft without demand or notice. That is the import of the first paragraph of Section 18 of the

---

[2] The Court need not resolve whether the Lease provided RutAir with 10 or 15 days to cure an Event of Default after notice in light of its interpretation of the Lease. That dispute and whether RutAir was given enough time to cure an Event of Default is immaterial as a matter of law since BA Jacobs did not repossess the Aircraft under those provisions of the Lease.

Lease, which is phrased in the disjunctive. *See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment [ECF 67], Exhibit B, at §18 ("If the Lessee fails to make any payment of rent or other charges within 30 days after such amounts are due and payable, of if Lessee commit an Event of Default, as defined herein, Lessor shall have the right to take possession of the Aircraft wherever it may be located without demand or notice . . . .).

It is not disputed that March rent of $25,000 was due on March 1, 2011. SOF, at ¶ 9. RutAir made a payment of $11,000 on March 30, 2011. SOF, at ¶ 16. As discussed above (*see supra* footnote 1), it is arguable that RutAir had a $1,684.83 surplus to apply to its March rent but then only paid an additional $11,000 on March 30, 2011. SOF, at ¶ 16. Even taking the $1,684.83 surplus into account, RutAir still was well short of the $25,000 due for its March rent payment. Therefore, as of April 1, 2011, RutAir was over 30 days past due on its March rent payment and, pursuant to Section 18 of the Lease, BA Jacobs had the right to repossess the Aircraft without notice. Although not required to do so, BA Jacobs gave RutAir notice on March 21, 2011, that it would repossess the Aircraft if RutAir did not bring its account current by April 1, 2011. SOF, at ¶ 20. Rut Air did not bring its account current, and BA Jacobs repossessed the Aircraft.[3]

Therefore, for the reasons discussed herein, BA Jacobs is entitled to summary judgment in its favor as to RutAir's liability under the Lease.

## C.    Levy Is Liable Under the Guaranty

BA Jacobs argues that it also is entitled to partial summary judgment on Count II of its Complaint as to Levy's liability under the Guaranty. Levy does not dispute that he entered into

---

[3] Unlike its letter dated February 2, 2011, which contained a 15-day notice of right to cure, BA Jacobs' March 21, 2011 letter did not contain such a notice. It stated simply that if RutAir did not bring its account current by April 1, 2011, BA Jacobs would repossess the Aircraft. SOF, at ¶¶ 14, 20.

the Guaranty in which he personally guaranteed the obligations of RutAir in the event that

RutAir defaulted under the Lease. SOF, at ¶ 8. The Guaranty provides in relevant part:

> The Guarantor agrees that upon any default of the Lease in payment of the Lessee's indebtedness to the Lessor or any part thereof, the Guarantor will pay to the Lessor, upon demand, the entire amount of the Indebtedness of the Lessee to the full extent if this Guaranty . . . . The liability of the Guarantor under this Guaranty shall not exceed the total sum of one year's rental payments, being the sum of $300,000, as provided in the Agreement, plus interest and any costs, including attorney fees, that may be incurred in enforcing the payment of the Indebtedness of the Lessee against the Guarantor, whether or not suit or action is instituted.

*See* BA Jacob's Memorandum of Law in Support of its Motion for Partial Summary Judgment

[ECF 67], Exhibit H, at §1.

As a threshold matter, Levy did not respond to BA Jacob's argument about his liability

under the Guaranty. Levy, therefore, has waived any argument in response to his liability under

the Guaranty. *See Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir.

2014) ("The non-moving party waives any arguments that were not raised in response to the

moving party's motion for summary judgment.").

The terms of the Guaranty are clear and unambiguous, and the plain language of the

Guaranty speaks for itself — in the event the Lease is breached, Levy is liable under the

Guaranty, and BA Jacobs can recover from him up to $300,000, plus interest, costs and

attorneys' fees. As discussed above, the undisputed facts establish that RutAir breached the

Lease as a result of its failure to satisfy its March rent obligation. Therefore, BA Jacobs is

entitled to summary judgment in its favor as to Levy's liability under the Guaranty.

**V. Conclusion**

For all of the reasons discussed in the Court's Memorandum Opinion and Order, Plaintiff

BA Jacobs' Motion for Partial Summary Judgment is granted [ECF 66]. This matter is set for

status at 9:30 a.m. on March 2, 2015, to discuss a procedure by which BA Jacobs can prove up its damages.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated:   January 27, 2015