# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BA JACOBS FLIGHT SERVICES, LLC, an Illinois Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> RUTAIR LIMITED, a/k/a RUTAIR LLC, a Jamaica Corporation, and GEORGE LEVY, an individual, <br><br> Defendants. | No. 12 C 2625 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

The Court assumes familiarity with, and incorporates by reference, the underlying facts as set forth in its previous Memorandum Opinions and Orders in this case. *See* [ECF Nos.74, 88]. Briefly, on December 1, 2010, Plaintiff BA Jacobs Flight Services, LLC ("BA Jacobs") entered into a lease agreement (the "Lease Agreement") with Defendant RutAir Limited ("RutAir"), in which BA Jacobs agreed to lease to RutAir a new 2010 Cessna Caravan 208B airplane (the "Aircraft") for a period of five years with monthly rent of $25,000, among other terms. As a condition of BA Jacobs entering into the Lease Agreement, Defendant George Levy signed a guaranty (the "Guaranty Agreement") in which he agreed to guarantee personally RutAir's payments under the Lease Agreement up to $300,000 in the event of a breach of that Agreement and to pay attorneys' fees and costs incurred by BA Jacobs in enforcing its rights under the Guaranty Agreement.

On January 27, 2015, this Court issued a Memorandum Opinion and Order [ECF No.74], in which it concluded that RutAir had breached the Lease Agreement. The Court granted partial

summary judgment in favor of BA Jacobs and against RutAir and George Levy as to their respective liability under the Lease Agreement and the Guaranty Agreement.

BA Jacobs then sought summary judgment on its claim for damages as a result of RutAir's breach of the Lease Agreement. On December 8, 2015, the Court issued a second Memorandum Opinion and Order [ECF No. 88] denying that motion and set this matter for an evidentiary hearing for BA Jacobs to prove up its damages. Specifically, the Court held that the acceleration clause in the Lease Agreement is an unenforceable penalty, and therefore, BA Jacobs is not entitled to accelerate the lease payments under the Agreement. Notwithstanding its holding that the acceleration clause is unenforceable, the Court recognized that BA Jacobs still is entitled to recover its actual damages.

The Court held an evidentiary hearing in this matter on February 17, 2016, and it was continued to and completed on March 4, 2016. The parties submitted pre-trial and post-trial briefs. [ECF Nos. 95, 96, 106, 108, 112]. The Court now must determine the monetary damages to which BA Jacobs is entitled as a result of RutAir's breach of the Lease Agreement. This Memorandum Opinion and Order memorializes the Court's findings of fact and conclusions of law with respect to BA Jacobs' damages in accordance with Rule 52 of the Federal Rules of Civil Procedure.

At the evidentiary hearing and in the pre-trial and post-trial briefing, the parties agreed on very little with respect to how to calculate BA Jacobs' damages in this case. In its post-trial brief, BA Jacobs claims that its actual damages include all of the unpaid monthly rent payments under the Lease Agreement for the full term of the Agreement ($1,500,000), minus the depreciation of the Aircraft ($400,000), minus the refurbishing costs of the Aircraft ($100,000), minus the early recapture from the sale of the Aircraft ($330,000) for a total of $670,000, plus the costs incurred

in chartering the Aircraft after it was repossessed and before it was sold ($50,000) for a total of $720,000 in actual damages. Plaintiff's Post-Trial Brief, [ECF No. 106, at 3]. BA Jacobs then calculates late fees in the amount of $743,850 for a total damage award of $1,463,850. Plaintiff's Post-Trial Brief, [ECF No. 106, at 3].

In contrast, RutAir asserts that BA Jacobs' actual damages include $45,545 for past due delinquent payments as of the date when the Aircraft was repossessed, $110,000 in profits on the rent payment due under the Lease Agreement after the Aircraft was repossessed but prior to it being sold between April 2011 and February 2012. RutAir maintains that BA Jacobs' actual damages in this case are only $155,545. Defendant's Post-Trial Brief, [ECF No. 108, at 2]. RutAir argues that the $50,000 in mitigation damages claimed by BA Jacobs should not be attributed to RutAir because they are not factually substantiated. Defendant's Post-Trial Brief, [ECF No. 108, at 3 n.1]. But even if the Court does include the $50,000 in mitigation losses, RutAir argues that the total damages award then would be $205,545. Defendant's Post-Trial Brief, [ECF No. 108, at 3].

The starting point for our analysis is this Court's holding in its previous Memorandum Opinion and Order, which states in relevant part:

> In the instant case, the Court finds that the acceleration clause in the Lease Agreement is an unenforceable penalty because the Lease Agreement does not take into account the effect of the early recapture of the leased Aircraft, which BA Jacobs subsequently has sold. Because BA Jacobs no longer owns the Aircraft and does not have any financial obligations related to the Aircraft, the acceleration clause in the Lease Agreement obligating RutAir to pay the remaining monthly rent payments for the remainder of the term of the Lease Agreement, which would amount to $1,400,000.00 for the 56 additional months of the term, would create a windfall for BA Jacobs.
>
> \*\*\*
>
> The Court finds that the losses to BA Jacobs are calculated easily, and that the liquidated damages allowed for in the Lease Agreement do not approximate the actual damages in this case. While actual damages may include, among other

> damages, loss of the monthly rent payments after the Aircraft was repossessed but prior to it being sold, once the Aircraft is sold, BA Jacobs no longer has the carrying costs of the equipment and recovering all of the monthly rent payments would be a windfall for BA Jacobs. This creates an incentive to default RutAir, repossess and sell the Aircraft as soon as possible, and collect the remaining lease payments anyway.

[ECF No. 88, at 4-5]. Even though the Court concluded that the acceleration clause is unenforceable, BA Jacobs still is entitled to recover its actual damages. [ECF No. 88, at 6]. Illinois law seeks to place the non-breaching party in as satisfactory a position as it would have been had the breach not occurred and had the contract been performed. *See Equity Insurance Managers of Illinois, LLC v. McNichols*, 324 Ill.App.3d 830, 837, 755 N.E.75, 80 (1st Dist. 2001).

The Court is not persuaded by either party's proposed calculation of damages. BA Jacobs' alleged damages are largely speculative and unsupported by the evidence. Moreover, its damages calculation starts from the premise that it should recover all of the monthly rent payments during the entire term of the Lease Agreement. As discussed above, however, the Court previously concluded that the acceleration clause is a penalty and not enforceable. [ECF No. 88, at 4-5]. Awarding BA Jacobs the total amount of the monthly payments due under the full term of the Lease Agreement would constitute a windfall for that reason, and the Court therefore disagrees with the underlying premise of BA Jacobs' damages calculation.

The damages calculation offered by RutAir also is unpersuasive. It is unclear to the Court the reasons why and how RutAir limits BA Jacobs' actual damages to $155,545. RutAir simply asserts without explanation that the past due rent plus the profits from the Lease Agreement from the date of repossession to the date of sale totals $155,545. Rut Air, however, offers no explanation or reason why it excludes from its damage calculation the $15,000 monthly loan

4

payments that BA Jacobs was obligated to make on the Aircraft for eleven months after it was repossessed and prior to its sale.

Both BA Jacobs and RutAir take issue with the credibility and expertise of each other's witnesses. Frankly, the Court was not persuaded by the testimony of any of the witnesses in this case. Bruce Jacobs and Scott Frank testified on behalf of BA Jacobs. *See generally* 2/17/16 Hearing Transcript, [ECF No. 103, at 7-121] (Mr. Jacobs' testimony); 3/4/16 Hearing Transcript [ECF No. 105, at 127-194] (Mr. Frank's direct testimony). Mr. Jacobs is a commercial pilot and the owner of BA Jacobs Flight Services. He also owns related companies that are involved in the business of owning and leasing airplanes and managing flight services. BA Jacobs concedes Mr. Jacobs' lack of experience in evaluating or leasing aircraft in its reply brief. Plaintiff's Post-Trial Reply Brief, [ECF No. 112, at 4]. Mr. Frank is Mr. Jacobs' business associate who offered testimony to support Mr. Jacobs' analysis, also without the requisite experience or expertise.

A significant portion of the testimony offered by Mr. Jacobs included testimony regarding valuation, depreciation and restoration of the Aircraft. BA Jacobs attempted to calculate the depreciated value of the Aircraft and the cost of restoration (and to provide evidence to support those calculations). The fundamental premise of his testimony, however, is that BA Jacobs is entitled to recover rent payments for the full term of the Lease Agreement and speculation about what the condition the Aircraft would have been in if RutAir had, in fact, used the Aircraft for the full term, which simply is not what happened here. This testimony was speculative and conclusory at best and not supported by any expert testimony, and the Court is not persuaded by it.

On the other hand, Howard Levy testified on behalf of RutAir. *See generally* 3/4/16 Hearing Transcript [ECF No. 105, at 196-220] (Mr. Levy's testimony). Mr. Levy is Managing

Director of RutAir and the nephew of Defendant George Levy, the guarantor. He testified as to his side of the story regarding the facts and circumstances involved in entering into the Lease Agreement with BA Jacobs and the eventual repossession of the Aircraft. Mr. Levy also offered his opinion on appropriate mitigation damages in this case, yet there is little evidence of his expertise or experience in valuing or leasing airplanes, particularly new airplanes.

A majority of the testimony offered in this case by both BA Jacobs and RutAir is self-serving, biased, speculative and not supported by any expert analysis or opinion. Mr. Jacobs admits that this transaction was "a unique" transaction because it was a Lease Agreement for a new airplane, and he had not entered into such a transaction before in the course of his business. Plaintiff's Brief [ECF No. 106, at 4]. Mr. Jacobs and Mr. Frank testified that Mr. Levy requested to lease a new airplane. 2/17/16 Hearing Transcript, [ECF No. 103, at 22]; 3/4/16 Hearing Transcript [ECF No. 105, at 137, 169]. Mr. Jacobs and Mr. Frank also testified that leasing a new airplane was unusual because the economics of that type of a lease are different that those involved in leasing a used airplane. 2/17/16 Hearing Transcript, [ECF No. 103, at 10]; 3/4/16 Hearing Transcript, [ECF No. 105, at 138]. Mr. Levy testified that he never asked for a new airplane or a specific model. 3/4/16 Hearing Transcript, [ECF No. 105, at 200]. Yet, Mr. Levy willingly and knowingly entered into a leasing agreement to lease a new airplane. Both sides also offered testimony and opinions on the methodology used for setting a reasonable rate for leasing the Aircraft at issue while taking into account depreciation of the Aircraft over the first five years. Neither side, however, hired an expert to opine or explain the economics of a lease transaction involving a new airplane with which neither had any experience.

Based on the objective evidence presented, the Court concludes that at the time BA Jacobs repossessed the Aircraft on April 2, 2011, RutAir owed BA Jacobs $45,545, consisting of

pilot fees, airfare engine reserve fees, delivery charges, late fees, partial rent payment, maintenance, and postage. This amount is not disputed by the parties. Therefore, the Court awards BA Jacobs $45,545 for the past due delinquent payments that accrued prior to BA Jacobs repossessing the Aircraft.

It also is not disputed that BA Jacobs sold the Aircraft in February 2012. Accordingly, there are eleven months of rent due and owing for a total of $275,000 that Rut Air failed to remit prior to BA Jacobs selling the Aircraft. The Court, therefore, awards $275,000 for the eleven months of rent payments after the Aircraft was repossessed and prior to its sale.

BA Jacobs also submitted evidence of additional losses notwithstanding its mitigation attempts, and those net operating losses amount to $50,000. Mr. Jacobs testified that after BA Jacobs repossessed the Aircraft, it would have owed $140,000 in sales tax which was avoided by placing the Aircraft into a charter service and making the Aircraft available to be used as a charter. 2/17/16 Hearing Transcript, [ECF No. 103, at 27]. This testimony is unrebutted by RutAir and Mr. Levy. Therefore, if BA Jacobs had not put the Aircraft into a charter service, it would have incurred a charge for $140,000 in Illinois sales, which undeniably would have been chargeable to RutAir as actual damages. BA Jacobs attempted to mitigate that charge by making the Aircraft available for charter services. In doing so, BA Jacobs made some money while also incurring some cost, with a net operating loss of $50,000.

It is important not to lose sight of the fact that if BA Jacobs had not placed the Aircraft into charter service, it would have been required to make $140,000 sales tax payment. RutAir argues that BA Jacobs' damages should not be chargeable to RutAir because they are not reasonable or factually substantiated. However, RutAir seems to miss the point that BA Jacobs appears to have saved RutAir a substantial amount of money, specifically a minimum of at least

7

$90,000 in additional expenses, by chartering the Aircraft. The Court finds BA Jacobs' mitigation was reasonable, notwithstanding its net operating loss, and awards $50,000 in mitigation losses.

The parties further dispute how to calculate the late fees under the Lease Agreement. Section 3 of the Lease Agreement specifically provides: "A late fee equal to 1.8% of the regular monthly payment per month will be charged for any payment or portion thereof not paid upon the due date." Lease Agreement, [ECF No. 91-1, at ¶3]. This language clearly contemplates that for each month a payment is missed a late fee of 1.8% will be assessed on the $25,000 monthly rent. That means a $450 late fee will be assessed for each month a payment is late.

For example, the April 2011 rent payment was eleven months late when the Aircraft was sold in February 2012. Therefore, there is a $4,950 late fee for the April 2011 rent payment (11 months x $450/month). The May 2011 payment was ten months late, and therefore, there is a $4,500 late fee for the May 2011 rent payment (10 months x $450/month). Taking into account the eleven months of missed payments and calculating the appropriate late fee for each month, the Court calculates the total late fees to be $29,700, and awards such amount to BA Jacobs.

In summary, the Court awards BA Jacobs $370,545, including $45,545 for past amounts due and owing prior to repossession, $275,000 for eleven months of rent payments from April 2011 through February 2012, and $50,000 in mitigation damages, plus $29,700 in late fees for a total award of $400,245, plus attorneys' fees, costs and prejudgment interest as discussed below.

BA Jacobs argued in its prehearing memorandum that it is entitled to an award of prejudgment interest and that Illinois law sets the rate for prejudgment interest at five percent per annum. *See* BA Jacobs' Prehearing Memorandum, [ECF No. 96, at 11]. In its prehearing memorandum, RutAir specifically cited the Illinois Interest Act, 815 ILCS 205/2, and

acknowledged that BA Jacobs "is entitled to a 5% interest on the amount owed from the date the Lease was breached." RutAir's Prehearing Memorandum, [ECF No. 95, at 6]. An award of prejudgment interest is left to the sound discretion of the district court. *See United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993). The Court agrees that an award of prejudgment interest is appropriate in this case. BA Jacobs has incurred substantial money damages, which began to accrue at least by April 2011 when BA Jacobs repossessed the Aircraft and RutAir stopped making its monthly rent payments. BA Jacobs has waited a long time to recover its losses. There is a time value of money, and the Court finds that BA Jacobs is entitled to prejudgment interest and that such an award is appropriate given the facts and circumstances of this case.

"[P]rejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately." *Am. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citation omitted). Based on the positions set forth in the parties' prehearing memoranda, BA Jacobs and RutAir agree that the appropriate rate for prejudgment interest is five percent. *See* [ECF No. 95, at 11] and [ECF No. 96, at 6]; *see also* 815 ILCS 205/2. The Court directs the parties to meet and confer about the calculation of prejudgment interest based on the damages awarded as discussed above. If the parties are unable to reach agreement, then the issue of the amount of prejudgment interest to be awarded will be discussed at the next status hearing and will be briefed if necessary.

The calculation of attorneys' fees and costs also was reserved until after the Court issued its Memorandum Opinion and Order on damages. As the Court previously held, BA Jacobs is entitled to recover its attorneys' fees and costs pursuant to Section 19 of the Lease Agreement

and Sections 1 and 20 of the Guaranty Agreement. *See* [ECF No. 88, at 7-8]. Therefore, the parties are ordered to comply with Northern District of Illinois Local Rule 54.3(d) and the procedure set forth therein for the exchange of information relating to the attorneys' fees and costs BA Jacobs seeks to recover. The parties are strongly encouraged to confer in good faith in an attempt to reach agreement on the amount of attorneys' fees and costs that should be awarded without the filing of any motion for fees.

For all of the reasons discussed in the Court's Memorandum Opinion and Order, the Court awards Plaintiff BA Jacobs Flight Services, LLC $400,245 in damages. BA Jacobs' Motion to Strike Exhibits from Defendants' Response to Plaintiff's Post-Trial Brief [ECF No. 110] is denied. This matter is set for status hearing on January 31, 2017 at 9:30 a.m. to discuss the entry of final judgment once the calculation of prejudgment interest is resolved.

It is so ordered.

Magistrate Judge Jeffrey T. Gilbert

Dated: January 20, 2017